IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ATM DATA CORP., an Oregon
corporation,

     Plaintiff,

  v.

JERRY L. MOORE and RICHARD C.
MOORE, husband and wife, and
WESTERN STATES ATM SYSTEMS,
INC., a Missouri corporation,

   Defendants.

Civ. No. 03-6070-AA

OPINION AND ORDER

_____

Thomas J. Greif
P.O. Box 80458
4159 SW Coronado
Portland, Oregon  97280
  Attorney for Plaintiff

James M. Finn
Joel A. Parker
Schwabe, Williamson & Wyatt, P.C.
1211 SW Fifth Avenue, Suites 1500-1900
Portland, Oregon 97204
  Attorneys for Defendants

1    - OPINION AND ORDER

AIKEN, Judge:

Defendants move for summary judgment on plaintiff's remaining claim for breach of contract, arguing that the doctrine of judicial estoppel precludes plaintiff's claim.  The motion is granted.

BACKGROUND

Plaintiff ATM Data Corp. is an Oregon corporation engaged in the business of selling and servicing automated teller machines (ATMs). Elizabeth Sanders is the sole shareholder and director and serves as plaintiff's president and secretary/treasurer.  Plaintiff was formed in July 2000 after Robert Sanders (Sanders), Elizabeth Sanders' husband, ceased operating an ATM service company known as Data Broadcasting Systems (DBS).

Defendant Western States ATM Systems, Inc. (Western States), is a Missouri corporation owned by defendants Jerry and Richard Moore.[1]  Western States serves as an independent sales organization (ISO) for network processors of ATM transactions and administers payments from network processors to the individual ATM owners.  In turn, Western States receives a portion of the settlement fees paid by banks and other financial institutions that issue ATM cards. Western States also sells and services ATMs.

---

[1]In plaintiff's recent response to defendants' motion for summary judgment, it makes much of the fact that defendants Moore have since sold their business for an allegedly large sum of money.  I find plaintiff's contentions regarding the sale of Western States irrelevant to the claims raised in this case or the issues raised in defendants' motion.

2    - OPINION AND ORDER

In 1997, Sanders d/b/a DBS and defendants entered into oral agreements that are the subject of this litigation. First, defendants agreed to pay Sanders fifty percent of settlement fees they received on ATMs maintained and serviced by Sanders. Second, defendants agreed to pay Sanders fifty percent of settlement fees they received on ATMs that Sanders physically sold or placed with businesses that utilized Western States as an ISO. Under the sold/placed agreement, Sanders would collect a percentage of settlement fees as long as defendants continued to serve as the ISO for those ATM customers.[2]

Between 1997 and 2000 defendants paid DBS pursuant to the terms of their agreements. In 1997 defendants paid DBS $11,218.89, in 1998 defendants paid $43,076.73, in 1999 defendants' payments totaled $45,307.43, and for the first six months of 2000, defendants paid DBS $31,113.34.

In a letter dated August 1, 2000, Sanders informed defendants that he was terminating DBS. Sanders ceased doing business as DBS due to an impending term of imprisonment after being convicted of sexually abusing the daughter of his ex-wife.

According to plaintiff, Sanders provided plaintiff with his trade secrets and customer list and gave his existing customers the option of utilizing plaintiff's services. Sanders told defendants

---

[2]The parties have disputed whether this agreement encompassed ATMs previously sold or placed by Sanders.

3    - OPINION AND ORDER

that plaintiff could provide the same services as he had and would honor all existing service practices and maintenance/service agreements. After plaintiff and defendants discussed entering into a maintenance or service agreement, defendants declined to do so.

Upon terminating his business on July 31, 2000, Sanders purportedly assigned to plaintiff his right to collect settlement fees received by defendants for ATMs Sanders had placed or sold. In August 2000, defendants paid plaintiff monies allegedly owed to Sanders but refused to make additional payments absent proof of a valid assignment to plaintiff.

On February 23, 2003, plaintiff filed suit alleging breach of contract, unjust enrichment, quantum meruit, estoppel, fraud and interference with contractual relations. Plaintiff sought an accounting and recovery of monies allegedly due pursuant to the oral contract between defendants and Sanders.

On October 29, 2003, defendants filed a motion for summary judgment seeking dismissal of all of plaintiff's claims.

On March 1, 2004, I granted defendants' motion for summary judgment in part and dismissed plaintiff's claims for unjust enrichment, quantum meruit, estoppel, and fraud. I further found that plaintiff presented no evidence that an agreement existed between plaintiff and defendants for payment of ATM revenues. Accordingly, I found that plaintiff's breach of contract claim arose from Sanders' purported assignment of his right to collect

fifty percent of settlement fees received by defendants for ATMs he had sold or placed.  Finally, I allowed plaintiff additional time to submit affidavits in support of its claim for interference with business relations, but plaintiff failed to do so.

In September 2004, defendants moved to abate this proceeding, on grounds that previous bankruptcy proceedings involving Sanders had been reopened to determine whether Sanders failed to disclose his interest in revenues from sold or placed ATMs.  <u>See</u> Affidavit of Thomas Greif, Ex. 3 (First Amended complaint in Sanders' bankruptcy proceeding).  I agreed with defendants that a stay was warranted, because the bankruptcy proceeding would determine whether Sanders' interest in the settlement fees he purportedly assigned to plaintiff was property of the bankruptcy estate.  <u>See</u> Opinion and Order dated November 19, 2004.

On June 29, 2006, an adversary proceeding trial was held in Sanders' bankruptcy case.  The Bankruptcy Court held that the Trustee, on behalf of Sanders' estate, was entitled to all revenues for ATM units sold and placed by Sanders.  Report on the Status of Case, p. 2.  The Bankruptcy Court further found that revenues from ATMs that were serviced by Sanders DBS were not property of the bankruptcy estate, because Sanders ceased providing service for those ATMs prior to filing bankruptcy, and the right to revenues on serviced ATMS was contingent on Sanders providing service.  Report on the Status of Case, Ex. A.

5    - OPINION AND ORDER

In October 2007, the Bankruptcy Court issued an order that the bankruptcy stay did not apply to a claim for revenues from ATMs serviced by Sanders.  Id.

Defendants now move for summary judgment against plaintiff's remaining claim of breach of contract on grounds of judicial estoppel, based on plaintiff's previous representations in this proceeding.

## DISCUSSION

Defendants argue that judicial estoppel precludes plaintiff from pursuing its breach of contract claim, because plaintiff's current theory of recovery is inconsistent with its previous representations in this proceeding.  Further, defendants maintain that the Bankruptcy Court's order effectively bars plaintiff's breach of contract claim for revenues from ATMs sold or placed by Sanders.  Defendants contend that plaintiff has recast its position and theories of recovery to avoid unfavorable results in this case and in Sanders' bankruptcy proceeding, and that its remaining claim against defendants should be dismissed.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co, 270 F.3d 778, 783 (9th Cir. 2001).  Courts invoke "judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent

6    - OPINION AND ORDER

positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" Id. (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).

Factors the court may consider in determining whether to apply the doctrine include:  1) whether the party's later position is "clearly inconsistent" with an earlier position; 2) the party's success in persuading a court to accept an earlier inconsistent position; and 3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Hamilton, 270 F.3d at 783 (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)).  These factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.  Additional considerations may inform the doctrine's application in specific factual contexts." New Hampshire, 532 U.S. at 751.

I find that judicial estoppel and the Bankruptcy Court's ruling preclude plaintiff's breach of contract claim, regardless of the theory relied upon by plaintiff.

In its complaint, plaintiff initially alleged that defendants breached an agreement under which plaintiff would continue to perform ATM services previously rendered by Sanders in exchange for

fifty percent of the settlement fees received by defendants for those ATMs.    See Complaint, pp. 3-4.    Defendants denied the allegations and asserted that plaintiff waived and was estopped from asserting claims against defendants.

Plaintiff later "amended" its contract claim and clarified that it sought "recovery solely for continuing 'royalties,'" i.e., fifty percent of settlement fees received by defendants for ATM units sold and placed by Sanders.    Defendants' Memorandum in Support of [First] Motion for Summary Judgment (doc. 19), Ex. 1, p. 2; Plaintiff's Concise Statement of Material Facts (doc. 22), p. 2 (arguing that the parties reached an oral agreement that plaintiff would receive revenues previously paid to Sanders); Plaintiff's Memorandum in Opposition to Defendants' [First] Motion for Summary Judgment (doc. 25), pp. 1-2 (stating that plaintiff seeks recovery of "'royalty revenues' due and payable from August of 2000 onward into the indefinite future for 50% of the revenues received by [defendants] from owners of [ATMs] which Robert Sanders had originally procured and then delivered" to defendants as the processing agent).    Plaintiff thus abandoned its claim for breach of contract based on maintenance or service of ATMs.[3]

Defendants then moved for summary judgment on grounds that

_____

[3]Moreover, plaintiff offered no evidence that it serviced or maintained ATMs at defendants' direction, and defendants expressly denied plaintiff's offer to provide ATM services for its customers after DBS went out of business.

8    - OPINION AND ORDER

plaintiff failed to establish any basis to support its claim for revenues from ATMs sold or placed by Sanders. Defendants argued that plaintiff had no evidence that it entered into such an agreement with defendants or that Sanders validly assigned his interest in those revenues to plaintiff.

In response, plaintiff did not argue that it entered into a separate revenue-sharing agreement with defendants. Rather, plaintiff asserted that Sanders assigned to plaintiff the right to collect fifty percent of settlement fees for ATMs he had sold or placed with defendants' customers. Plaintiff's Concise Statement of Material Facts in Opposition to Defendants' [First] Motion for Summary Judgment (doc. 22), pp. 3-4; Affidavit of Elizabeth L. Sanders (doc. 23), pp. 3, 13-14; Plaintiff's Memorandum in Opposition to Defendants' [First] Motion for Summary Judgment (doc. 25), pp. 1-2, 6-8, 10-13, 15, 20-21.

At oral argument on February 20, 2004, plaintiff confirmed that its claim for relief was limited to continuing revenues owed to Sanders based on settlement fees defendants received from ATM customers provided by Sanders, and that it was entitled to such revenues by virtue of Sanders' assignment of his interest to plaintiff.

However, after the Bankruptcy Trustee sought a declaration that Sanders' interest in revenues from sold or placed ATMs was property of the bankruptcy estate, plaintiff and Sanders changed

positions and declared that Sanders <u>did not</u> assign his interests in
the settlement fees to plaintiff.    Declaration of Joel Parker
(Parker Decl.), Ex. 13, p. 4; Ex. 14, pp. 2-3; Ex. 15, pp. 137-38.
The Bankruptcy Court sided with the Trustee and found that Sanders'
interest belonged to the estate.    Thus, the Bankruptcy Court's
order prevents plaintiff from asserting a claim against defendants
based on an assignment of Sanders' interest in those revenues.

Now, plaintiff intends to pursue the theory that an oral
contract exists between plaintiff and defendants for payment of
revenues on ATMs sold or placed by Sanders.    Plaintiff explains
that earlier in these proceedings, Sanders was "confused" by the
legal meaning of the term "assignment" and did not intend to claim
that he had assigned his interest in ATM revenues owed by
defendants.    Instead, plaintiff alleges that its "claim in the case
at hand arises under an oral contract between plaintiff and
defendants, which in turn was based upon the primary oral agreement
between" Sanders and defendants.    Plaintiff contends that "nothing
has changed from a factual standpoint" to support defendants'
motion for summary judgment.    I disagree and find that judicial
estoppel precludes plaintiff's claim.

First, plaintiff's current position is directly inconsistent
with its previous representations to this court.    <u>Hamilton</u>, 270
F.3d at 783.    Earlier in these proceedings and in response to
defendants' first motion for summary judgment, plaintiff withdrew

10    - OPINION AND ORDER

or abandoned its claim based on an express agreement with defendants and instead relied on the purported assignment of Sanders' interest.

Second, in reliance on plaintiff's assertion and evidence of assignment, I denied defendants' motion for summary judgment with respect to plaintiff's breach of contract claim. Plaintiff thus succeeded in persuading the court to accept its argument that an valid assignment from Sanders existed and to deny defendants' first motion for summary judgment.[4] Id.

Finally, I find that plaintiff would obtain an unfair advantage if it was now allowed to pursue a breach of contract theory that it previously withdrew. Throughout this proceeding, plaintiff has repeatedly asserted that it was entitled to revenues from ATMs sold and placed by Sanders pursuant to Sanders' assignment of his interest. Parker Decl., Ex. 2, pp. 3, 13-14, 27-28; Ex. 3, pp. 1-2, 5, 6-8, 10, 13, 15-16, 20-21; Ex. 4, p. 3; Ex. 5, p. 4; Ex. 6, p. 9; Ex. 7; Ex. 8, p. 2. Plaintiff defeated summary judgment by relying on evidence of an assignment and cannot

---

[4]In fact, plaintiff's counsel admits that he manufactured an "after the fact" assignment from Sanders to counter defendants' argument that plaintiff lacked evidence of a valid assignment. Plaintiff's Memorandum in Opposition to Defendants' Second Motion for Summary Judgment (doc. 103), p. 5. Given that Sanders and plaintiff now contend that Sanders did not and never intended to assign his interest in the settlement fees to plaintiff, it raises a serious question as to whether plaintiff and its counsel perpetuated a fraud upon the court when they claimed and presented evidence of a valid assignment of rights in response to defendants' first motion for summary judgment.

now disavow an assignment of rights to pursue a breach of contract claim under the theory that defendants entered into a separate agreement to pay plaintiff the revenues from ATMs placed and sold by Sanders, based on Sanders' previous agreement with defendants. Moreover, plaintiff presents no evidence that the parties entered into such an agreement.

Regardless, the ruling of the Bankruptcy Court effectively precludes recovery of revenues for ATMs sold or placed by Sanders. The Bankruptcy Court found that Sanders' estate, not plaintiff, was entitled to those revenues.  Therefore, plaintiff cannot assert a claim based on Sanders' agreement with defendants, as his right to receive revenues was deemed part of the bankruptcy estate.

<u>CONCLUSION</u>

Defendants' Motion for Summary Judgment (doc. 96) is GRANTED, and plaintiff's Motion to Strike (doc. 100) is DENIED.
IT IS SO ORDERED.

Dated this  5   day of June, 2008.


          /s/ Ann Aiken
              Ann Aiken
       United States District Judge


12   - OPINION AND ORDER